OPINION
{¶ 1} Barbara Brown is appealing the judgment of the juvenile division of the Montgomery County Common Pleas Court, which terminated the parental rights of Ms. Brown's son and awarded permanent custody to Montgomery County Children's Services Board ("MCCSB").
 {¶ 2} On October 20, 2001, P.P. was born seven weeks premature and addicted to narcotics. As a result of her mother's drug use during the pregnancy, P.P. is developmentally delayed. A caseworker from MCCSB, Jenny Gardner, met with Deanna Price, P.P.'s mother, six days after P.P. was born because Ms. Price wanted to place P.P. up for adoption. As a result of the meeting, P.P. was placed in a "legal risk" foster home when she was released from the hospital. A "legal risk" foster home is a situation where the foster parents intend to adopt the child if MCCSB gains permanent custody of the child.
 {¶ 3} Neither of P.P.'s parents completed their case plan objectives or regularly visited with the baby. After a DNA test, Anthony Brown was considered by the juvenile court to be P.P.'s father. Mr. Brown visited P.P. on February 7, 2002 accompanied by his mother, Barbara Brown, and fiancee. Mr. Brown never again sought to have contact with P.P. but Ms. Brown began making several sporadic visits over the course of the next six months. However, Ms. Brown attended less than half of her scheduled visitation dates.
 {¶ 4} Ms. Brown, who lives in Columbus, indicated to MCCSB that she had an interest in obtaining custody of P.P. As a result, MCCSB requested Franklin County Children's Services conduct a home study of Ms. Brown. The report from the home study indicated that Ms. Brown did not understand P.P.'s special needs, the care required to attend to these needs, and that Ms. Brown did not have a special bond with P.P.
 {¶ 5} On November 15, 2001, MCCSB filed a complaint alleging that P.P. was a dependent child. A guardian ad litem was appointed and he filed a preliminary report recommending MCCSB be granted custody on February 4, 2002. On July 16, 2002, the guardian ad litem filed an updated report in which he recommended that Ms. Brown be granted temporary custody of P.P. A hearing on MCCSB's permanent custody motion was held on July 18, 2002, wherein Ms. Brown and Ms. Gardner, an MCCSB caseworker, testified. Ms. Gardner testified at the hearing that MCCSB wished to have permanent custody of P.P. so that her foster parents could adopt her. On August 5, 2002, the juvenile magistrate issued an order granting permanent custody to MCCSB. Ms. Brown filed objections, but not a transcript of the hearing with the trial court. The trial court overruled Ms. Brown's objections and affirmed the judgment granting MCCSB permanent custody. Ms. Brown has filed this appeal from that judgment.
 {¶ 6} Ms. Brown raises the following assignment of error:
 {¶ 7} "Whether the trial court abused its discretion in rejecting paternal grandmother Barbara Brown as temporary custodian with supervision and whether the decision granting Montgomery County Children Services permanent custody was supported by clear and convincing evidence under O.R.C. 2151.414, et seq."
 {¶ 8} Appellant argues that the trial court abused its discretion in denying her temporary custody of P.P. because there was not clear and convincing evidence that granting MCCSB permanent custody was in P.P.'s best interest. We disagree.
 {¶ 9} A juvenile court's discretion in determining whether an order of permanent custody is in the best interests of a child should be given a great deal of respect because of the nature of the proceeding and the impact on the lives of the parties involved. In re Awkal (1994),95 Ohio App.3d 309, 316. Further, the juvenile court gains knowledge essential to weighing credibility at the hearing through observing the witnesses which cannot be conveyed to a reviewing court through a printed record. Id.; see also Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. As a result, a reviewing court should not reverse a juvenile court's determination on permanent custody absent an abuse of discretion, specifically a finding that the trial court acted in an arbitrary, unreasonable, or capricious manner. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. A trial court has broad discretion in custody matters. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. A reviewing court should be guided by the presumption that the trial court's findings were correct. Seasons Coal Co., supra, at 80.
 {¶ 10} When making a permanent custody determination, the juvenile court must have clear and convincing evidence supporting its decision. R.C. 2151.414(B). In order for a court to grant permanent custody of a child to the State, the State must prove:
 {¶ 11} "[T]hat it is in the best interests of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 12} "* * *
 {¶ 13} "(b) The child is abandoned." R.C. 2151.414(B)(1).
 {¶ 14} Whether a grant of permanent custody to the State is in the child's best interests is a matter for the discretion of the trial court and should be determined pursuant to R.C. 2152.414(D). Awkal, supra, at 316.
 {¶ 15} R.C. 2151.414(D) requires a court to consider all relevant factors including the following when determining the best interests of the child:
 {¶ 16} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D).
 {¶ 21} Barbara Brown is appealing her son, Anthony Brown's, termination of parental rights and placement of P.P. in MCCSB's permanent custody. Although Ms. Brown was not a party in the action below, Ms. Brown has standing to appeal because the trial court permitted her to testify at the hearing and considered her request to have custody of P.P. In re Travis Children (1992), 80 Ohio App.3d 620, 625-626. Ms. Brown asserts that when considering the R.C. 2151.414(D) factors the trial court did not have before it clear, convincing evidence that awarding the State permanent custody was in P.P.'s best interests.
 {¶ 22} In addressing the first factor under R.C. 2151.414, Ms. Brown first argues that the trial court gave no weight to P.P.'s interaction and relationship with Ms. Brown. However, the lower court looked at Ms. Brown's visitation with P.P. Ms. Brown attended less than half of her opportunities to visit with P.P. Ms. Brown asserts that she explained that she missed those visitations because she was afraid to drive to Dayton alone and could not arrange to have someone accompany her. However, Ms. Brown had a vehicle and a drivers licence, making her physically able to attend the visitation. Thus, there was evidence to support the trial court's conclusion that Ms. Brown's failure to attend over half of the scheduled visitation appointments did not amount to a commitment to P.P. Further, the home study of Ms. Brown's home revealed a lack of a relationship between P.P. and Ms. Brown, as Ms. Brown could not remember P.P.'s name or birth date. At the hearing, Ms. Brown denied not knowing P.P.'s name. Further, the Franklin County caseworker who evaluated Ms. Brown's home stated that she sensed that Ms. Brown was only seeking custody of P.P. out of a sense of duty. This evidence supports the magistrate's conclusion that Ms. Brown did not have a significant bond with P.P.
 {¶ 23} This is contrasted against P.P.'s relationship with her foster parents. P.P. has lived with her foster parents since November 16, 2001, the day she was released from the hospital. Additionally, the guardian ad litem noted that P.P.'s foster parents' home was very appropriate for P.P. and that she was doing very well in the home. Further, P.P. is very well bonded with her foster parents and continues to grow with minimal health concerns. Therefore, clear and convincing evidence supported the lower court's decision that P.P.'s relationship with her foster parents was more beneficial to her than her brief relationship with Ms. Brown.
 {¶ 24} On the second factor listed under R.C. 2151.414, Ms. Brown argues that the trial court did not properly consider the guardian ad litem's report and recommendation that she be granted temporary custody of P.P. Although a juvenile court must consider the recommendation of the guardian ad litem, it is not required to follow the recommendation. In reHaywood, Allen App. Nos. 1-99-93, 1-99-94, 1-99-95, 2000-Ohio-1740. The Third District Court of Appeals has stated:
 {¶ 25} "The function of a guardian ad litem or for a representative for the child is to secure for such child a proper defense or an adequate protection of its rights. The ultimate decision in any proceeding is for the judge and not for the representative of the parties and the trial court did not, for that reason, err in making an order contrary to the recommendation of the child's representative." In reHeight, (1975), 47 Ohio App.2d 203, 206.
 {¶ 26} Ms. Brown argues that the guardian ad litem's report should have been given more weight and points to a misstatement by the magistrate regarding the guardian ad litem's report. The magistrate mistakenly stated that the guardian ad litem recommended P.P. be placed with a non-relative but then continued on to state that it considered Ms. Brown as a legal relative. Also, the magistrate did not reiterate properly that the guardian ad litem had recommended P.P.'s placement with Ms. Brown on a temporary custody basis, supervised by the Franklin County Department of Children's Services. However, at the hearing the guardian ad litem clearly advocated that P.P. be placed with Ms. Brown on a temporary custody basis and aggressively cross examined Ms. Gardner, P.P.'s caseworker. It is apparent from the record of the hearing that the guardian ad litem made his position clear and the simple fact that the magistrate's decision was contrary to the guardian ad litem's report does not mean the report was not considered.
 {¶ 27} Additionally, the guardian ad litem's recommendation was problematic. The guardian ad litem's report stated that the Franklin County caseworker found Ms. Brown's home to be appropriate for P.P. In actuality, the caseworker stated that the home only had two very small, crowded bedrooms and that Ms. Brown planned to place a crib in her bedroom, to which the caseworker noted, "it would be very difficult to fit a crib in the bedroom." (Tr. Exhibit 1). Ms. Gardner further noted that when a child is placed in a home there should be a bed and bedroom for the child. Thus, Ms. Brown's home was not found to be "appropriate" as the guardian ad litem described.
 {¶ 28} Moreover, the guardian ad litem failed to address concerns raised by the caseworker who conducted the home study. Specifically, the home study report stated that Ms. Brown did not appreciate the extent of P.P.'s medical needs and the "requirements necessary in caring for [P.P.]." (Tr. Exhibit 1). In addition, the home study stated, "Ms. Brown does not appear to have a bond with [P.P.]. She did not know child's name or birth date. Ms. Brown also made comments regarding child's physical appearance. Ms. Brown has had only minimal contact with child." (Tr. Exhibit 1). At the hearing, the guardian ad litem claimed that the State was not concerned about Ms. Brown's ability to care for P.P., to provide for her special needs, or her interactions with P.P. This is directly contrary to the statements in the home study. Also, Ms. Gardner stated that she was concerned about the care P.P. would receive in Ms. Brown's home. Ms. Gardner pointed to Ms. Brown's statements that she would utilize various relatives for childcare while she worked, particularly that either a couple of her children or grandchildren were always at her home, as concerning because P.P. has special needs which "need to be addressed consistently with consistent persons so that she [doesn't have] any further developmental delays." (Tr. p. 38). Therefore, the guardian ad litem's report did not adequately address these valid concerns raised by the State. Thus, the trial court had clear and convincing evidence before it contrary to the guardian ad litem's recommendation.
 {¶ 29} In regard to the third factor under R.C. 2151.414, Ms. Brown does not address this factor, but this factor supports the lower court's decision. The third factor asks the court to consider the custodial history of the child. P.P. has been in the temporary custody of the MCCSB since shortly after her birth. P.P. has been in the care of her foster parents since the day she came home from the hospital. This custodial history supports the juvenile court's decision to grant permanent custody of P.P. to the State.
 {¶ 30} As for the fourth factor listed under R.C. 2151.414, Ms. Brown asserts that clear and convincing evidence was not presented that she could not fulfill P.P.'s need for legally secure permanent placement or that a grant of permanent custody to the state was in P.P.'s best interests. Although R.C. 2151.412(G) and 2151.414(D) provide guidelines for an agency to consider in placing a child, the statutes do not require the agency to award custody to a relative rather than to the agency. Inre Branstetter (May 18, 2001), Montgomery App. No. 18539, at *2; In reDixon (Nov. 29, 1991), Lucas App. No. L-91-021. The court should grant permanent custody to the State if the State has proven by clear and convincing evidence that it is in the best interests of the child. R.C.2151.414(B). Clear and convincing evidence is proof that produces "in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Pieper Children (1993),85 Ohio App.3d 318, 326. The best interests of a child are served by the child being placed in a permanent situation that fosters growth, stability, and security. In re Adoption of Ridenour (1991),61 Ohio St.3d 319, 324. Therefore, courts are not required to favor a relative if, after considering all the factors, it would be in the child's best interest for the agency to be granted permanent custody. Inre Knight, (March 22, 2000), Lorain App. No. CA 98CA0072589, CA 98CA00726698;In Re Dyal, Hocking App. No. 01CA11, 2001-Ohio-2383; In reWilkenson, (Oct 12, 2001), Hamilton App. No. C-010402, C-010408; In reLewis, Athens App. No. 01CA20, 2001-Ohio-2618.
 {¶ 31} At the hearing, evidence was presented which questioned the stability of the home Ms. Brown could provide. Although Ms. Brown denied it, the home study reported that Ms. Brown did not know P.P.'s name or birth date and did not have sufficient room in her home for P.P. Also, Ms. Brown's planned childcare for P.P. was that various relatives would help watch P.P. while she worked. (Tr. Exhibit 1). The home study report indicated that Ms. Brown had stated that there was "always someone at her home, either one or two of her children or a couple of her grandchildren." (Tr. Exhibit 1). Thus, the State presented evidence that Ms. Brown did not have stable childcare arranged. Further, the evidence in the home study indicated that Ms. Brown was not prepared to care for P.P.'s special needs.
 {¶ 32} In contrast, P.P.'s foster parents are prepared to adopt her. P.P.'s foster parents provided a "very appropriate" home and are "bonded very well" with P.P. (Guardian ad litem updated report). P.P. has thrived in her foster home, demonstrating few developmental delays. Moreover, P.P.'s foster parents have enrolled her in Early Intervention, a service which has helped to prevent further developmental delays. Thus, the grant of permanent custody to the State places P.P. in her foster parents' home, which would certainly be secure. Clear and convincing evidence existed that secure, stable permanent placement for P.P. was best achieved through a grant of permanent custody to the State, in order for adoption by P.P.'s foster parents.
 {¶ 33} R.C. 2151.414 also permits the court to consider any other relevant factors. Specifically, the State points to testimony by Ms. Brown which indicated a lack of sincerity and evidence that Ms. Brown might place P.P. at risk by exposing her to her father.
 {¶ 34} At the hearing, Ms. Brown testified that the home study was inaccurate. Ms. Brown claimed that she was able to recall P.P.'s name at the time of the home study. Yet, Ms. Brown had no explanation for why the caseworker stated she could not recall the child's name. Also, Ms. Brown testified that she could fit a crib into her bedroom, which also conflicted with the home study report. Additionally, Ms. Brown made several statements regarding her lack of visitation which were refuted by Ms. Gardner, P.P.'s caseworker. Ms. Brown claimed that when she canceled her scheduled visitation she explained to Ms. Gardner that she was afraid to drive alone. (Tr. 59). However, Ms. Gardner testified that Ms. Brown never said anything to her when she canceled her visits. (Tr. 71) Further, Ms. Brown claimed at the hearing that she had missed some of the scheduled visitation because of work. (Tr. 72). However, Ms. Gardner testified that she had scheduled the visitation at Ms. Brown's convenience, specifically to accommodate Ms. Brown's work schedule. (Tr. 72). Also, Ms. Brown testified that she had asked Ms. Gardner to help her get to Dayton more often. (Tr. 58). Yet, Ms. Gardner testified that Ms. Brown had never made such a request.
 {¶ 35} Further, Ms. Brown testified that her son, Anthony Brown, did not live with her and further that he had not been to her house in two weeks. (Tr. 61-62). Ms. Brown claimed that she accepted service for him but denied that he spent much time there. (Tr. 62-64). Yet, Ms. Gardner testified that not only did she have Ms. Brown's address listed as one of Anthony Brown's addresses, but she elaborated that she spoke with him that morning at Ms. Brown's address. (Tr. 21). The trial court could have concluded that Ms. Brown was not acting in good faith in seeking custody of P.P.
 {¶ 36} The trial court may also have been concerned by evidence that Ms. Brown would allow her son, Anthony Brown, to have access to P.P. in defiance of MCCSB's advice. At trial, Ms. Brown gave the following testimony:
 {¶ 37} "[Prosecutor]: [g]iven that [Anthony] has had some troubled history, what kind of access would you, if [P.P.] came to live with you, what kind of access are you going to let Anthony have to [P.P.]?
 {¶ 38} "[Ms. Brown]: Well, I mean, from what I gathered, the courts say that he cannot be around her. So, I already told him that.
 {¶ 39} "[Prosecutor]: Which court was that?
 {¶ 40} "[Ms. Brown:] Well, Jenny [Gardner] told me that he couldn't be around her, that he is not supposed to have no communication with her because of his record. But, he is going through a program. So, I don't know.
 {¶ 41} "[Prosecutor:] If [P.P.] was living with you, what do you think would be appropriate, as far as her contact with your son?
 {¶ 42} "[Ms. Brown:] I really don't know. As she grows older, you know — he does have other kids and never harmed them." (Tr. 62-63).
 {¶ 43} The magistrate could have reasonably been troubled by this exchange and its indication that Ms. Brown was not committed to protecting P.P. from exposure to Anthony Brown. This was also clear, convincing evidence of Ms. Brown's lack of dedication to P.P.
 {¶ 44} After having reviewed the evidence and applying it to the factors listed in R.C. 2151.414, we find that there was clear and convincing evidence that P.P.'s best interests were served by placing her in the permanent custody of the State. We cannot say that the trial court abused its discretion. Ms. Brown's assignment of error is without merit and is overruled.
 {¶ 45} The judgment of the trial court is affirmed.
BROGAN, J. and WOLFF, J., concur.